# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BERKSHIRE HATHAWAY HOMESTATE INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 17 C 9370 |
| CHICAGO METROPOLITAN HOSPITAL, LLC, ROBERT DIELEMAN, and KATHLEEN DIELEMAN, ) ) ) ) | Judge Joan H. Lefkow |
| Defendants. ) | |

## OPINION AND ORDER

In this insurance coverage action, plaintiff Berkshire Hathaway Homestate Insurance Company ("Berkshire") insured a property that sustained fire damage in 2017. Berkshire initially denied coverage and sued the property owner Chicago Metropolitan Hospital LLC ("Chicago Metropolitan") and the mortgagees Robert and Kathleen Dieleman ("the Dielemans") for a declaratory judgment. (Dkt. 1.) The Dielemans counterclaimed for breach of contract and unreasonable and vexatious delay. (Dkt. 55.) Well into this litigation, Berkshire offered to pay the Dielemans the then-current balance of their mortgage note, but the Dielemans declined. Berkshire amended its complaint to seek a declaratory judgment that its offer to the Dielemans satisfied its obligations under the policy. (Dkt. 65.) Berkshire and the Dielemans now file cross-motions for summary judgment on Count III of Berkshire's amended complaint (for declaratory judgment against the Dielemans) and Count I of the Dielemans' counterclaim (for breach of

1

contract). For the reasons below, Berkshire's motion (dkt. 69) is granted and the Dielemans' motion (dkt. 67) is denied.[1]

## BACKGROUND[2]

Chicago Metropolitan owns a building in Chicago that was once operated as Sacred Heart Hospital (the "Property"). (Dkt. 88 ¶¶ 3, 17.) In 2014, the Dielemans lent Chicago Metropolitan $500,000, secured by a mortgage on the Property and three other parcels of land. (*Id.* ¶¶ 41–42.) Berkshire issued a $7,500,000 commercial property insurance policy (the "Policy") to Chicago Metropolitan covering the Property from September 26, 2016 to September 26, 2017. (*Id.* ¶ 21.) The Policy lists the Dielemans as loss payees. (*Id.* ¶ 30.)

The Policy provides that under certain circumstances, the Dielemans could be entitled to coverage even if Chicago Metropolitan is not. The Policy's Loss Payable Provisions Endorsement provides:

2. Lender's Loss Payable Clause

* * *

---

[1] The court has jurisdiction under 28 U.S.C. § 1332. Berkshire is a citizen of Nebraska (dkt. 88 ¶ 1), and the Dielemans are citizens of Nevada (*id.* ¶¶ 6–7). Both Berkshire and the Dielemans incorrectly identify Chicago Metropolitan as a citizen of Illinois because its sole manager is a citizen of Illinois. (Dkt. 71 ¶¶ 2, 4–5; dkt. 68 ¶ 2.) But an LLC's citizenship is its members' citizenship, not its manager's. *Cosgrove* v. *Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998). Chicago Metropolitan has admitted, however, that its two members are citizens of Illinois and Canada, making Chicago Metropolitan a citizen of Illinois and Canada. (Dkt. 24 ¶¶ 7–10.) The parties are therefore completely diverse. The amount in controversy also exceeds $75,000. Venue is proper in this district under 28 U.S.C. § 1391(b).

[2] Unless otherwise noted, the facts set out below are taken from the parties' Local Rule 56.1 statements and are construed in the light most favorable to the non-moving party. The court will address many but not all the factual allegations in the parties' submissions, as the court is "not bound to discuss in detail every single factual allegation put forth at the summary judgment stage." *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). Following its regular practice, the court has considered the parties' objections to the statements of facts and includes in its opinion only those portions of the statements and responses that are appropriately supported and relevant to the resolution of this motion. Any facts that are not controverted as required by Local Rule 56.1 are deemed admitted.

> b. For Covered Property in which both [you, i.e. Chicago Metropolitan] and a Loss Payee have an insurable interest:
>
> > \* \* \*
>
> > (3) If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:
> >
> > > (a) Pays any premium due under this Coverage Part at our request if you have failed to do so;
> > >
> > > (b) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and
> > >
> > > (c) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.
>
> > All of the terms of this Coverage Part will then apply directly to the Loss Payee.
>
> > (4) If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:
> >
> > > (a) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and
> > >
> > > (b) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.
>
> > At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

(Dkt. 88 ¶ 32.)

Under that endorsement, if Berkshire pays the Dielemans but not Chicago Metropolitan, Berkshire in effect buys the debt (or a portion of it) from the Dielemans and succeeds to their rights (or a portion of them) against Chicago Metropolitan. (Dkt. 71-1 at 42.) Hence, if Berkshire pays off the Dielemans in full, the Policy provides that Chicago Metropolitan "will pay [its] remaining debt to [Berkshire]." (*Id.*) Finally, the endorsement caps the Dielemans' potential

recovery, stating that Berkshire "will not pay any Loss Payee more than their financial interest in the Covered Property, and . . . will not pay more than the applicable Limit of Insurance on the Covered Property." (*Id.*)

In June 2017, a fire occurred at the Property. (*Id.* ¶ 33.) Two days later, Chicago Metropolitan submitted a claim under the Policy to Berkshire. (*Id.* ¶ 34.) And in November 2017, the Dielemans sent Berkshire a letter entitled "Letter of Representation and Notice of Claim," asserting a first-priority lien on any proceeds of Chicago Metropolitan's claim for coverage based on the mistaken belief that Chicago Metropolitan "failed to identify [the Dielemans] as payees of the Policy." (*Id.* ¶ 38; *see* dkt. 71-5.) In December 2017, Berkshire denied Chicago Metropolitan's claim, asserting that Chicago Metropolitan was ineligible for coverage because, among other things, it did not maintain an automatic fire alarm. (*Id.* ¶ 39; *see* dkt. 71-4.)[3] Berkshire's denial did not address the Dielemans' letter. (*Id.* ¶ 38.)

Shortly after denying coverage, Berkshire filed this action for declaratory judgment. (Dkt. 1.) The Dielemans counterclaimed for breach of contract and bad faith. While litigation was pending, Berkshire's attorney informally asked the Dielemans' attorney to provide documentation about the loan and mortgage. (Dkt. 71 ¶ 43.)[4] When the Dielemans' response revealed that two of the other parcels subject to the mortgage had been sold without the proceeds being credited to the loan balance, Berkshire requested more information. (Dkt. ¶¶ 7–9.) The Dielemans then advised Berkshire that they had filed a foreclosure complaint against Chicago

---

[3] Because the current dispute involves only Berkshire and the Dielemans, the court makes no findings or decisions about whether Berkshire properly denied coverage to Chicago Metropolitan, including whether its stated reason for denial is true or appropriate under the Policy.

[4] The Dielemans dispute this fact because Berkshire characterized these requests as "informal discovery," which the Dielemans argue does not exist. There is no genuine dispute, however, that (1) Berkshire requested these documents, and (2) the request fell outside the judicial discovery process. (*See* dkt. 71-8 ¶¶ 5–9.) The dispute is semantic, not material.

4

Metropolitan, which they eventually withdrew when the Dielemans and Chicago Metropolitan agreed to modify the loan. (Dkt. 88 ¶¶ 48–51.)

Berkshire issued discovery requests to the Dielemans in March 2019. (*Id.* ¶ 52.) The Dielemans' discovery responses revealed that Chicago Metropolitan had substantially paid down its loan: it owed the Dielemans $504,357.37 at the time of the fire but at the time of discovery owed the Dielemans only $401,094.38. (*Id.* ¶ 56; dkt. 92 ¶ 2.) In July 2019, Berkshire offered to pay the Dielemans the then-current balance on the loan ($401,094.38) in exchange for all rights under the Note. (*Id.* ¶ 56.) The Dielemans rejected that offer, insisting that Berkshire should pay them the $504,357.37 that Chicago Metropolitan owed them at the time of the fire.

The Dielemans and Berkshire have now filed cross-motions for summary judgment on Count 3 of Berkshire's amended complaint, which seeks a declaratory judgment that the $401,094.38 payment satisfied Berkshire's obligations to the Dielemans, and Count 1 of the Dielemans' amended counterclaim, which seeks damages for Berkshire's breach of contract.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To determine whether any genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). In doing so, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott* v. *Harris*, 550 U.S. 372, 378 127 S. Ct.

1769, 167 L. Ed. 2d 686 (2007). When considering cross-motions for summary judgment, the court must be careful to draw reasonable inferences in the correct direction. *See, e.g.*, *Int'l Bhd. of Elec. Workers, Local 176* v. *Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). The court may not weigh conflicting evidence or make credibility determinations. *Omnicare*, 629 F.3d at 704.

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323–24.

## ANALYSIS

The key facts are not in dispute. The Dielemans sent their letter to Berkshire in 2017, when Chicago Metropolitan owed them about $500,000. Berkshire did not attempt to pay the Dielemans until 2019, after Chicago Metropolitan had paid down the principal by about $100,000, now owing the Dielemans only about $400,000. The dispute centers on whether the Policy requires Berkshire to pay the Dielemans the $500,000 they were owed at the time of the loss or the $400,000 they are owed now. The court must interpret the Policy to resolve the dispute. Under Illinois law, which the parties appropriately agree controls here, interpreting the Policy is a question of law that the court may resolve on summary judgment. *St. Paul Fire & Marine Ins. Co.* v. *Village of Franklin Park*, 523 F.3d 754, 756 (7th Cir. 2008). "Like any contract under Illinois law, an insurance policy is construed according to the plain and ordinary

meaning of its unambiguous terms." *Auto-Owners Ins. Co.* v. *Munroe*, 614 F.3d 322, 325 (7th Cir. 2010).

The Dielemans argue that the Policy compels Berkshire initially to value the Dielemans' claim at the time of the loss, and the court agrees. *Great-West Life Assur. Co.* v. *General Acc. Fire & Life Assur. Corp.*, 452 N.E.2d 550, 554, 116 Ill. App. 3d 921, 554 (1983). But the court also agrees with Berkshire that other provisions of the Policy permit Berkshire to reduce the Dielemans' claim if Chicago Metropolitan's indebtedness to the Dielemans is later reduced. The Dielemans' conclusion—that they are entitled to whatever they were owed at the time of the fire no matter what happens later—thus does not follow from their incomplete interpretation of the Policy. Thus, although both parties correctly interpret parts of the Policy, only Berkshire reaches the correct result about what it owes to the Dielemans. Berkshire is therefore entitled to summary judgment.

The Dielemans cite the Policy section on valuing the damage to the Property itself, which provides that the Property must be valued "[a]t actual cash value as of the time of loss or damage," with exceptions not raised in these cross-motions. (Dkt. 71-1 at 22.) The Dielemans also cite various sources of Illinois law stating that insurers must appraise properties as of the time of the loss. 50 Ill. Admin Code § 919.80(d)(8)(A) (requiring insurers to value property "at time of loss"); *Lytle* v. *Country Mut. Ins. Co.*, 2015 IL App (1st) 142169, ¶ 23 (similar under Illinois common law). While the Loss Payee provisions do not explicitly state when the Dielemans' interest should be valued, the Dielemans argue that in light of these principles their interest should be valued as of the same date as the Property—the date of the loss.

The court agrees. "[T]he balance of the debt at the time of the fire determines the amount recoverable by the mortgagee." *Great-West*, 452 N.E.2d at 554 (citing 4 Appleman, *Insurance*

7

*Law & Practice* § 2122, at 34 (1970)). This comports with the nature of the Dielemans' insured interest under Illinois law. When an insurance policy lists the mortgagee as a loss payee, "[t]he risk insured against is an impairment of the mortgaged property which adversely affects the mortgagee's ability to resort to the property as a source for repayment." *Id.* at 554 (quoting *Whitestone Savings & Loan Ass'n* v. *Allstate Ins. Co.*, 270 N.E.2d 694, 697, 28 N.Y.2d 332 (1971)). At the time of the fire, the Dielemans had an interest in using the property to secure repayment of about $500,000; when a fire damaged the Property, it also damaged the Dielemans' collateral for what was then a $500,000 indebtedness.

But the Dielemans' conclusion does not follow from their interpretation. "A liability may be fixed by the occurrence of conditions which provide for its existence . . . but after it becomes thus fixed, it may terminate as to the party in whose favor it existed . . . ." *Ins. Co. of N. Am.* v. *Citizens Ins. Co. of N.J.*, 425 F.2d 1180, 1182 (7th Cir. 1970). Thus, although the Dielemans are correct that their claim was first set at the time of the fire, they overlook the provisions that permitted Berkshire to reduce that claim if the debt shrank. Berkshire correctly observes that it agreed to pay "the whole principal on the debt plus any interest *accrued*" and capped the Dielemans' recovery at their "financial interest." (Dkt. 71-1 at 41 (emphasis added).) Similarly, Berkshire is entitled to pay off the entire loan and succeed to the Dielemans' rights, in which case Chicago Metropolitan would pay Berkshire its "*remaining* debt." (*Id.* (emphasis added).) Under Illinois law, these provisions mean that Berkshire may reduce the Dielemans' claim by the amount it has already been satisfied, even if the satisfaction occurred after the fire. *Ins. Co. of N. Am.*, 425 F.2d at 1182 ("[F]ull or partial extinguishment of the debt itself, whether prior to the loss or subsequent to the loss, precludes to the extent thereof, any recovery by the loss-payable mortgagee for the plain and sole reason that the debt, itself, has been to that extent

extinguished."); *Zurich Ins. Co.* v. *Principal Mut. Life Ins. Co.*, No. , 1992 WL 309547 (N.D. Ill. Oct. 20, 1992) ("[Insurer] must provide coverage for [mortgagee's] claim *to the extent of nonsatisfaction*." (emphasis added)); *Great-West*, 452 N.E.2d at 554 ("When the debt has been satisfied in full subsequent to the fire, neither reason nor precedent suggest recovery on the policy by the mortgagee." (quoting *Whitestone*, 270 N.E.2d at 697)); *cf. Benton Banking Co.* v. *Tenn. Farmers Mut. Ins. Co.*, 906 S.W.2d 436, 438–39 (Tenn. 1995) (adopting this rule and collecting cases from 23 jurisdictions doing the same).

Common sense supports this interpretation. "The purpose of the rule is clear. It is intended to prevent a mortgagee from receiving a double payment." *Benton Banking*, 906 S.W.2d at 439. Under this interpretation, the Dielemans will receive the full $500,000 they were owed at the time of the fire—$400,000 from Berkshire and $100,000 in principal[5] that Chicago Metropolitan has already paid. The only reason the Dielemans claim that Berkshire's $400,000 offer would not make them whole is that they paid attorneys to litigate this case. But in the American legal system, "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P.* v. *ASARCO LLC*, — U.S. —, 135 S. Ct. 2158 (2015). Although the Dielemans had to litigate to get Berkshire to make them whole, it has now offered to do so. Under the Dielemans' theory, on the other hand, Berkshire would pay the Dielemans $500,000 to satisfy what is now a $400,000 debt. In total, under the Dielemans' theory, the Dielemans would receive $600,000 in principal—$500,000 from Berkshire and $100,000 from Chicago Metropolitan. The Policy neither compels nor tolerates such a windfall.

The Dielemans counter that Berkshire will receive a windfall because of its delay, paying $400,000 in 2019 for a claim it should have settled for $500,000 in 2017. First, the Dielemans

---

[5] Including interest, Chicago Metropolitan paid the Dielemans $200,340.90 between the fire and the date Berkshire issued its check. (Dkt. 71-14 at 6–8.)

9

are mistaken about this purported windfall. Had Berkshire immediately paid the Dielemans $500,000, it would have taken over their right to recover from Chicago Metropolitan and, presumably, received the same $100,000 in principal that Chicago Metropolitan has since paid to the Dielemans. (Dkt. 71-1 at 42.)[6] Berkshire received a benefit from its delay in paying the claim, but that benefit is not an additional $100,000 but rather the two years it did not have to bear the risk of Chicago Metropolitan's failing to repay the loan.

Second, the safeguard against an insurer's delay in paying a valid claim is not to inflate the insurance claim to make it punitive instead of compensatory but instead to penalize the insurer for unreasonable and vexatious delay under Illinois Insurance Code Section 155. 215 Ill. Comp. Stat. 5/155(1). The Dielemans have alleged that Berkshire violated Section 155, and if they can prove that Berkshire "unreasonabl[y] delay[ed] . . . settling a claim, and it appears to the court that such . . . delay is vexatious or unreasonable, the court may allow . . . reasonable attorney fees, other costs, plus an amount not to exceed" the lesser of 60% of the claim, $60,000, or the difference between the insurer's settlement offer and its ultimate liability on the claim. *Id.* If proven, the Section 155 claim will appropriately penalize Berkshire for its unreasonable delay and deter future insurers from delaying payments to loss payees in the hopes that the policyholders will pay down the debt or the lenders will foreclose. Because neither party has moved for summary judgment on that claim, the court makes no factual or legal conclusions about it.

Finally, the Dielemans argue that Berkshire should not be entitled to take the Dielemans' rights under the Note and Mortgage because Berkshire breached the Policy. *See James* v. *Lifeline*

---

[6] For the same reason, Berkshire's delay in paying the Dielemans did not harm Chicago Metropolitan, which would have paid $100,000 in principal either way.

*Mobile Medics*, 792 N.E.2d 461, 464, 341 Ill. App. 3d 451 (2003) ("[A] party in breach may not enforce the contract."). As discussed above, Berkshire ultimately satisfied its obligations under the Policy by exercising its option to pay off the Dielemans in full. Berkshire therefore succeeds to the Dielemans' rights under the Note and Mortgage.

In sum, because even though the Dielemans were originally owed $504,357.37, Berkshire needed only to pay the Dielemans what they were owed at the time of payment. Berkshire's tender of $401,094.38 therefore satisfied its obligation to the Dielemans. And because that payment would make the Dielemans whole, the Dielemans have no damages from Berkshire's earlier denial of coverage. The Dielemans thus have no more rights under the Policy and must transfer their interest in the Note and Mortgage to Berkshire.

## CONCLUSION AND ORDER

Berkshire's motion (dkt. 69) is granted and the Dielemans' motion (dkt. 67) is denied. Judgment is entered in favor of Berkshire and against the Dielemans on Count 3 of the Amended Complaint and Count 1 of the Dielemans' Amended Counterclaim.

Date: January 2, 2020

_____
U.S. District Judge Joan H. Lefkow